IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Gutter Topper, Ltd., | : | |
| | : | Case No. 1:05-cv-149 |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | Order Awarding Damages to Gutter |
| Sigman & Sigman Gutters, Inc., et al. | : | Topper, Ltd. |
| | : | |
| Defendants. | : | |

This matter is before the Court on Plaintiff Gutter Topper, Ltd.'s Trial Brief on Damages (Doc. 137.) Defendant William H. Sigman III did not file a brief in opposition.

## I.    BACKGROUND

The factual history underlying this case has been set out several times before, most recently in an Order issued on November 18, 2014. (Doc. 135.) It will not be restated here.

Parts of the procedural history do bear repeating. On October 27, 2006, the Court issued the Summary Judgment Order holding that Plaintiff Gutter Topper, Ltd. ("GTL") was entitled to summary judgment against Defendants Sigman & Sigman Gutters, Inc. ("SSGI") and William H. Sigman III for breach of contract, trademark infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. §§ 1114 and 1125, respectively, and for unfair competition in violation of Georgia law. (Doc. 66.)

The Court set the case for trial on damages issues on January 22, 2007 but later vacated the trial date and closed the case upon notice that SSGI and Sigman had filed for bankruptcy. (Docs. 68, 89, 90, 91.) In 2008, the Court temporarily reopened the case upon notice that the bankruptcy proceedings had terminated. (Docs. 93, 94.) The Court again closed the case in October 2008 after Defendants re-filed for bankruptcy. (Docs. 98, 99.) The Court reopened the

case as to Sigman only on August 17, 2012 pursuant to a stay in the adversary proceeding between GTL and Sigman as part of the bankruptcy proceedings. (Docs. 100, 101.) The Court again set the damages case against Sigman for trial but vacated that trial date upon agreement of the parties to resolve the remaining damages issues upon written briefs.

In the November 18, 2014 Order, the Court made the following determinations relevant to damages:

> (1) William Sigman's infringing conduct and unfair competition was willful, deliberate, and fraudulent, (2) this is an "exceptional case" under the Lanham Act, (3) the infringement and unfair competition was committed willfully and maliciously to cause injury to GTL, and (4) Sigman is personally and individually liable for the infringement and unfair competition.

(Doc. 135 at PageID 4116–17.)

The Court then gave the parties the opportunity to brief the issue of the proper amount of damages to award to GTL. GTL filed the pending motion on February 6, 2015, but Sigman failed to file an opposition brief.

## II.    ANALYSIS

The Lanham Act authorizes the following damages:

> (a) Profits; damages and costs; attorney fees
>
> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the

> case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

15 U.S.C. § 1117. Section 1117(a) gives the district court discretion to set the damages amount, so long as the damages do not amount to a penalty. *La Quinta Corp. v. Heartland Props. LLC*, 603 F.3d 327, 341–42 (6th Cir. 2010) (regarding penalty prohibition). The purpose of the award may be to compensate the plaintiff for its actual injuries or to serve the interests of justice. *Id.* at 342–43. The damages awarded should not be greatly disproportionate to the actual loss. *Id.* at 343.

> Courts can examine many factors to set a damages award including the following:
>
> the defendant's intent to deceive, whether sales were diverted, the adequacy of other remedies, any unreasonable delay by the plaintiff in asserting its rights, the public interest in making the misconduct unprofitable, and "palming off," i.e., whether the defendant used its infringement of the plaintiff's mark to sell its own products to the public through misrepresentation.

*Id.*

GTL seeks an award of $60,423.74 in profit disgorgement, $2,868,675 in damages, $5,615.96 in costs, $320,850 in attorney fees, and pre-judgment interest. (Doc. 137 at PageID 4119.)

**A.      Lost Profits**

GTL requests a disgorgement of Sigman's profits. GTL asserts in its briefs that its damages calculation is based upon a "Sigman Gutter Income" spreadsheet Sigman produced during discovery. (Doc. 63 at PageID 1260; Doc. 63-2 at PageID 1266; Doc. 137-1 at PageID 4138.) The document has not been properly authenticated, but Sigman has not objected to its authenticity despite multiple opportunities to do so. The spreadsheet shows that Sigman's net profits in 2004 were $60,423.74. GTL has no basis to determine Sigman's profits from 2005.

Part of the difficulty in determining how much of Sigman's profits arose from sales of the infringing products is that Sigman commingled gutter products. He palmed off his own gutter products as GTL products, kept inaccurate records, and issued Gutter Topper warranties for his own gutter products. However, the fact that the lost profits cannot be calculated with mathematical certainty does not preclude awarding lost profit damages so long as the Court is able to make a fair and reasonable assessment. *See La Quinta*, 603 F.3d at 343. The Court will award GTL disgorgement of profits damages in the amount of $60,423.74.

**B.     Costs**

GTL has established reasonable costs in this case in the amount of $5,615.96. (Doc. 137-3 at PageID 4146–47.) The Court will award $5,605.96 for costs.

**C.     GTL's Damages**

GTL submits an expert report by Edward J. Grelle, CPA dated August 26, 2005 to support its damages calculation of $2,868,675. The Court finds the damages calculation by GTL and Grelle to be too speculative to support an award in that amount.

Grelle sets out as undisputed fact, and Sigman does not challenge, that Sigman purchased the following amounts of Gutter Topper product from GTL:

| Year | Amount of Gutter Product Purchased |
|---|---|
| 2002 | 187,450 feet |
| 2003 | 339,9000 feet |
| 2004 | 114,200 feet |

(Doc. 137-2 at PageID 4143.)[1] Grelle then assumes that the amount of gutter product purchased in 2004 was significantly greater than 114,200 feet because the amount purchased had increased from 2002 to 2003 and therefore should have increased again in 2004. (*Id.*) However, the Court

---

[1] In 2006, at the summary judgment stage of this case, Defendants did challenge GTL's damages calculation as too speculative to serve as the basis for a damages award. (Doc. 52.) However, Defendants did not challenge the feet purchased numbers set forth above.

4

declines to assume based on past performance that Sigman purchased a greater amount of Gutter Topper product in 2004 than it actually purchased. The Court will award GTL actual damage for the year 2004 based on the amount of gutter products actually purchased by Sigman.

GTL then asks the Court to award damages for lost sales in the Atlanta, Georgia market where Sigman operated his business for the years 2005–2007. Grelle assumes a 10% sales increase for each of those successive years in his damages calculation. (*Id.* at PageID 4143–44.) GTL asserts that it was unable to re-penetrate the metro-Atlanta market due to Sigman's infringement and acts of unfair competition. Tony Iannelli, the president of GTL, testified that GTL was unable to secure a new roofing dealer to sell Gutter Topper products in Atlanta because of Sigman's poor reputation in the area. (Iannelli Dep., Doc. 130 at PageID 3280, 3283–84.) Iannelli's testimony, however, was based on second hand and third hand information. GTL did not support this argument with testimony from other Atlanta-area dealers or from the GTL agents who solicited those dealers. The Court will not award damages after 2005 because such damages are too speculative.

Further, the Court will not assume a 10% sales increase from 2004 to 2005. GTL has not established that a sales increase projection is warranted. In fact, Iannelli and Grelle both testified that GTL's overall sales fell between 2004–2005. (*Id.* at PageID 3283; Grelle Dep., Doc. 60 at PageID 1192.) Instead, the Court will assume that GTL could have sold the same amount of Gutter Topper products in 2005 as GTL sold to Sigman in 2004.

Accordingly, the Court assumes that GTL would have sold 114,200 feet to Sigman in both 2004 and 2005 for total sales of 228,400 feet of Gutter Topper product. Grelle stated that Sigman paid an average of $2.39 per foot of product in 2004. The total sales dollar amount for 2004 and 2005 at that price is $545,876 (228,400 feet × $2.39). Grelle further stated that Sigman

5

paid GTL a total of $273,885 in 2004. (Doc. 137-2 at PageID 4143.) That leaves $271,991 ($545,876 – $273,885) in unpaid sales for 2004 and 2005. Finally, Grelle states that GTL had a gross profit percentage rate of 44.05% in 2004. (*Id.*) The gross profit for those unpaid sales for 2004 and 2005 equals $119,812 ($271,991 × 0.4405 (rounded)).

GTL requests that its actual damages be trebled as permitted by the Lanham Act. 15 U.S.C. § 1117(a). The Court finds that trebling is appropriate here. The Court previously has determined that Sigman acted willfully and with intent to deceive, palmed off his own gutter product as the Gutter Topper product, and diverted sales, and that GTL did not delay in protecting its rights. *See La Quinta*, 603 F.3d at 343 (setting forth factors for consideration for damages). Accordingly, the Court will award damages in the amount of $359,436 ($119,812 × 3).

**DThis .**     **Attorney Fees**

GTL requests that this Court award it attorney fees as an "exceptional case" under the Lanham Act. *See* 15 U.S.C. § 1117(a). The Court previously determined this is an "exceptional case." (Doc. 135 at PageID 4116–17.)

In calculating a statutory award of attorneys' fees, "[t]he most useful starting point ... is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The result of this calculation— called the lodestar—"produces an award that *roughly* approximates the fee that the prevailing party would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A.*, 559 U.S. 542, 551 (2010) (emphasis in the original). The lodestar calculation is strongly presumed to yield a reasonable fee. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

GTL seeks attorney fees for work on this case between February 2005 and January 2015 by five attorneys and two law clerks.  (Doc. 137-4 at PageID 4160–96.)  The attorneys charged progressively higher rates over time during the case.  A summary of the fees requested is as follows:

| Attorney/Law Clerk | Total Hours | Billing Value |
|---|---|---|
| R. Scott Hughes | 1,284.6 | $262,500.00 |
| David L. Barth | 177.2 | $51,184.50 |
| Sara S. Wolf | 26.8 | $6,494.00 |
| Joseph S. Burns | 25.1 | $3,759.00 |
| Jesse R. Lipcius | .70 | $105.00 |
| Robert C. Hassman (law clerk) | 5.3 | $397.50 |
| J. Thomas Hodges (law clerk) | 4.2 | $315.00 |
| **Total** | **1523.9** | **$324,755.00** |

GTL then deducts the sum of $3,905 for fees previously awarded in connection with a discovery dispute, making the total fees requested to amount to $320,850.  (Doc. 33.)  Sigman, by failing to respond to the GTL's damages brief, has not made a proper objection to either the work performed or the rates charged by GTL's attorneys or law clerks.

The Court will not expend much time examining the reasonableness of the work performed in this case in the absence of objections by Sigman.  The Court notes that 1,523.9 hours does not seem facially excessive.  The case was filed ten years ago and has had a procedurally bumpy road.  GTL has been diligent in pursuing its rights from initially seeking a preliminary injunction, to obtaining summary judgment after full discovery, to reinstating this case after Defendants had declared bankruptcy, to establishing their entitlement to damages.

The attorney fee rates requested by GTL's attorneys are reasonable when compared to the Rubin Committee rates, an attorney fees rubric developed in 1983.  The Committee arrived at the following categories and hourly rates:

7

| 1983 Rubin Committee Rates | |
|---|---|
| Paralegals | $37.91 |
| Law Clerks | $23.96 |
| Young Associates (0–2 years) | $61.77 |
| Intermediate Associates (2–4 years) | $71.62 |
| Senior Associates (4–5 years) | $82.81 |
| Young Partners (6–10 years) | $96.39 |
| Intermediate Partners (11–20 years) | $113.43 |
| Senior Partners (21+ years) | $128.34 |

*West v. AK Steel Corp. Ret. Acc. Pension Plan,* 657 F. Supp. 2d 914, 932 n. 4 (S.D. Ohio 2009).

Judges in the Southern District of Ohio have applied the Rubin Committee rate with a 4% annual cost-of-living allowance to measure the reasonableness of fees requested. *Hunter v. Hamilton Cty. Bd. of Elections*, No. 1:10-cv-820, 2013 Wl 5467751, at *17 (S.D. Ohio Sept. 30, 2013); *Georgia–Pacific LLC v. Am. Int'l Specialty Lines Ins. Co.*, 278 F.R.D. 187, 192 (S.D. Ohio 2010).

The rates sought by GTL's attorneys and law clerks compare favorably to the Rubin Committee rates:

| Attorney/Clerk | Year Admitted | Fee Requested 2005 | Adjusted Rubin Rate 2005 | Fee Requested 2014 | Adjusted Rubin Rate 2014 |
|---|---|---|---|---|---|
| R. Scott Hughes | 1999 | $170 | $228.44 | $250 | $382.61 |
| David L. Barth | 1978[2] | $260 | $304.16 | $340 | $432.91 |
| Sara S. Wolf | 1976 | $240 | $304.16 | $310 (in 2013) | $416.26 (in 2013) |
| Joseph S. Burns | 2002 | $140 | $169.73 | N/A | N/A |
| Jesse R. Lipscius | 2004[3] | $150 (in 2006) | $152.25 | N/A | N/A |

---

[2] The admittance dates for attorneys Hughes and Barth were derived from the Plaintiff's brief. (Doc. 137 at PageID 4135 n.3.)

[3] The admittance dates for attorneys Wolf, Burns, and Lipscius were obtained from the 2013–2014 Cincinnati Bar Association Directory.

8

|  |  |  | (in 2006) |  |  |
|---|---|---|---|---|---|
| Robert C. Hassman (law clerk) | N/A | $75 (in 2006) | $59.05 (in 2006) | N/A | N/A |
| J. Thomas Hodges (law clerk) | N/A | $75 (in 2006) | $59.05 (in 2006) | N/A | N/A |

The attorney rates charged are lower than the adjusted Rubin Committee rates. The law clerk rate is higher than the adjusted Rubin Committee rate, but the law clerks completed few hours of work and the difference is more than offset by the lower attorney rates. The Court will award GTL attorney fees in the amount requested of $320,850.

### III. CONCLUSION

For the foregoing reasons, GTL is awarded total damages in the amount of $746,325.70: $60,423.74 for disgorged profits, $5,615.96 in costs, $359,436 for trebled damages, and $320,850 in attorney fees.

IT IS SO ORDERED.

S/Susan J. Dlott_____
Judge Susan J. Dlott
United States District Court